**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292676)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
(415) 534-1911
Fax: (888) 422-5191

Attorneys for Plaintiffs, on behalf of themselves and all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TATIANA COLEMAN, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>CHEVRON CORPORATION a Delaware Corporation with its principal place of business in the State of California; and DOES 1-100, inclusive<br><br>Defendants. | CASE NO. 2:25−cv−10740−MWC−BFM<br><br>**CLASS COMPLAINT FOR VIOLATIONS OF:**<br><br>**(1) NEGLIGENCE**<br>**(2) STRICT LIABILITY—ULTRAHAZARDOUS ACTIVITY**<br>**(3) PRIVATE NUISANCE (CONTINUING)**<br>**(4) PUBLIC NUISANCE (CONTINUING)**<br>**(5) TRESPASS**<br><br>**DEMAND FOR JURY TRIAL** |

Class Representative Plaintiff Tatiana Coleman ("Plaintiff"), by and through their attorneys, individually and on behalf of others similarly situated, allege upon information and belief against Defendant Chevron Corporation ("Chevron") and Does 1 to 100 (collectively, "Defendants") as follows:

## NATURE OF THE ACTION

1. This case represents an example of a corporate choice to place profits over public safety. It arises from the explosion that occurred on October 2, 2025 at Chevron's oil refinery in El Segundo, California ("Refinery") which resulted in a massive fire that spread smoke and fumes throughout the South Bay area, including Plaintiff's home.

2. While the exact cause of the explosion is under investigation, at least one injured worker has called it a "preventable disaster."[1]

3. Notably, this marks the fourth incident at Chevron's Refinery in the last ten years, with successive fires occurring in 2017, and 2018, followed by a recent incident in 2022.

4. Defendants exercised exclusive control over the Refinery, including oversight of its operating standards, health and safety protocols, and maintenance procedures.

5. Therefore, Defendants culpability in this most recent Refinery fire could not be clearer given its long history of failing to exercise the necessary diligence to prevent these disasters from occurring.

## PARTIES

6. Plaintiff Tatiana Coleman resides in Hawthorne, California and has an intent to remain there, and is therefore a citizen of California. Plaintiff has suffered physical and economic harm as a result of Defendant's actions and inactions.

---

[1] Harter, C. 'I thought we got nuked or something.' Massive explosion, fire at Chevron refinery rocks El Segundo, https://www.latimes.com/california/story/2025-10-02/la-me-fire-refinery. (last accessed October 3, 2025).

7. Defendant Chevron Corporation is a Delaware Corporation, whose most recent filing with the California Secretary of State states that its headquarters is located at 5001 Executive Parkway, Suite 200 San Ramon, Ca 94583. In accordance with the decision by the United States Supreme Court in *Hertz Corp. v. Friend* (2010) 559 U.S. 77, 93, the principal place of business of a corporation is where its headquarters is present. As such, Plaintiff is informed and believes that Chevron is, for purposes of diversity jurisdiction, a resident of the State of California.

8. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 to 50, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names under Code of Civil Procedure § 474. Plaintiff is informed and believe, and based thereon allege, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known.

9. Plaintiff is informed and believes, and based thereon allege, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.

## VENUE AND JURISDICTION

10. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because Plaintiff, and at least one of the members of the putative Class, as defined below, are citizens of a different state than Defendant, there are more than 100 putative Class Members, and the amount in controversy exceeds $5 million, exclusive of interest and costs. This Court has jurisdiction over Defendant because Defendant operates in and directs commerce to this District. Defendant intentionally avails itself of the markets within this District,

rendering the exercise of jurisdiction by this Court just and proper. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides in this District.

**FACTUAL BACKGROUND**

11. At all times relevant herein, Defendant Chevron owned, operated, controlled, managed, and/or maintained the oil refinery located at 324 W El Segundo Blvd, El Segundo, CA 90245 ("Refinery").

12. At approximately 9:30 p.m. on October 2, 2025, a fire broke out at the Chevron Refinery in El Segundo located approximately one mile from the Los Angeles International Airport.

13. Local residents were rattled by the loud explosion, which was followed by a large fireball and the Refinery's safety flare, sending flames visible for miles and turning the sky orange. The fire erupted in the Refinery's jet fuel production unit, specifically, the Refinery's Isomax 7 unit, which converts mid-distillate fuel oil into jet fuel.

14. According to news reports, the Refinery is "the second largest in California and Chevron's second-biggest refinery in the United States. The facility supplies a fifth of all motor vehicle fuels and 40% of the jet fuel consumed in southern California."[2]

15. Four other incidents have occurred at this facility in the last ten years. In 2016, a fire burned several storage containers at the Refinery. On October 17, 2017, a fire broke out in the facility's distribution manifold, which set off massive flames near storage tanks and power lines. Less than a year later, on September 17, 2018, a burn-off at the facility was triggered by a power failure at the Refinery. Another massive fire occurred in a section of the Refinery on November 8, 2022. Yet, many

[2] Seba, Erwin. "Chevron's Los Angeles refinery down after large fire erupted in jet fuel unit." https://www.reuters.com/world/us/fire-breaks-out-chevrons-refinery-el-segundo-la-times-says-2025-10-03/ (last accessed October 3, 2025).

residents, including Plaintiff, describes the explosion and fire that occurred on October 2, 2025, as significantly larger than the previous four explosions and fires.

16. Plaintiff Tatiana Coleman lives in Hawthorne, California, approximately three miles away from the Refinery, just off El Segundo Boulevard where the Refinery is located.

17. The smoke emitted from the explosion consisted of physical particles, including ash, soot, and other toxic particulate matter that entered and was deposited onto Plaintiff's property.

18. Plaintiff suffers from severe asthma, which flared up immediately after the explosion filled the air with heavy smoke and fume, requiring her to administer two breathing treatments—one that same night and another the following morning.

19. Ms. Coleman also requires physical therapy, and her therapist's office is located on El Segundo Boulevard. Due to the intense smoke and odor caused by the explosion and fire at the Refinery, Plaintiff Coleman's physical therapist had to shut down for the day, and could not see any patients, putting Ms. Coleman at further distress.

20. Ms. Coleman is also a long-term resident of the City of Hawthorne, having lived in and around Hawthorne for the past 10 years, and witnessed the prior explosions at the Refinery. If there are any long-term effects to the air and water of Hawthorne caused by this fire at the Refinery, Ms. Coleman will suffer from prolonged exposure.

21. The fire has been contained as of the filing of this Complaint. However, Plaintiff continues to suffer debilitating symptoms of the asthma attacks triggered by the fire and will continue to suffer physical and economic harm as a result of Defendant's actions and inactions resulting in the October 2, 2025 explosion.

22. The repeated incidents demonstrate that the October 2nd explosion was not an isolated incident, but a regular occurrence, creating a continued risk to Plaintiff

and the Class, which include other residents who live in the neighborhoods surrounding the Refinery.

23. These incidents have the potential to cause severe and widespread harm to Plaintiff and nearby residents including serious physical injury, exposure to harmful toxins emitted by smoke and fumes, property damage, and disruption to their daily life. These invasions are the type which would cause substantial annoyance and disturbance to any reasonable person living in the surrounding area.

24. Refineries handle flammable chemicals, explosive gases, and toxic substances, creating a substantial risk of catastrophic injury and property damage. This risk cannot be completely eliminated by even the utmost care because of the inherent danger of the materials used, the complexity of the procedures, and inevitable human error in operating the equipment.

25. The risk of harm is especially heightened by the Refinery's close proximity to densely populated communities. Therefore, the potential for catastrophic injury at the Refinery outweighs the benefits of its continued operation at this location.

26. In 2024, Defendant's annual revenue was over $193 billion. Given Defendant's sizeable resources, the Refinery can be relocated without undue burden and expense.

27. Due the ultrahazardous nature of the activities carried out at the Refinery, Defendant owed Plaintiff and the Class a duty to mitigate the risks of harm by ensuring safe and competent operation of the Refinery, compliance with legal and regulatory safety standards, and proper training and supervision of employees.

28. Based on Defendant's history of repeated incidents, as described above, Plaintiff alleges on information and belief that the October 2nd explosion was caused by the unsafe, non-compliant, or otherwise improper operation of equipment and handling of hazardous materials, or other acts and omissions by Defendant, the exact nature and scope of which will be established during discovery.

## CLASS ACTION ALLEGATIONS

29. Class Representative Plaintiff brings this action on their own behalf and on behalf of all other persons similarly situated. The putative class that Class Representative Plaintiff seeks to represent is composed of:

> All Los Angeles County residents who reside within a five-mile radius of the Refinery who were present within a five-mile radius during the Refinery fire on October 2, 2025 (hereinafter the "Class").

30. Excluded from the Class are the natural persons who are directors, and officers, of the Defendant, as well as judicial officers, their families, and their staff who are assigned to this action.

31. Plaintiff is informed and believe that the members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the Class members is unknown to Class Representative Plaintiff at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendant.

32. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Class Representative Plaintiff's claims are typical of the members of the class, and Class Representative Plaintiff can fairly and adequately represent the interests of the Class.

33. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.

34. Class Representative Plaintiff will fairly and adequately protect the interests of the Class. Moreover, Class Representative Plaintiff has no interest that is contrary to or in conflict with those of the Class they seek to represent during the Class Period. In addition, Class Representative Plaintiff has retained competent counsel experienced in class action litigation to further ensure such protection and intend to prosecute this action vigorously.

35. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendant in the State of California and would lead to repetitious trials of the numerous common questions of fact and law in the State of California. Class Representative Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

36. Proper and sufficient notice of this action may be provided to the Class members through direct mail a variety of means, including direct mail, as well as electronic means such as email, or whatever the Court deems appropriate.

37. Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent certification of this action as a class action, Class Representative Plaintiff and the members of the Class will continue to be damaged by the practices of Defendant.

## CAUSES ACTION

## FIRST CAUSE OF ACTION

### Negligence

38. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

39. Plaintiff is informed and believes, and thereon allege, that at the time of the explosion, Defendant owned, operated, controlled, managed, and/or maintained the Refinery, as described above.

40. At all relevant times, Defendant was required to exercise the utmost care and diligence in the ownership, operation, management, supervision, inspection,

maintenance, repair, and/or control of the Refinery, so as to not cause harm to public property, the environment, public resources, public health, and/or the comfortable use and enjoyment of life and liberty by the public.

41. At all relevant times, Defendant failed to exercise care in its ownership, operation, management, supervision, inspection, maintenance, repair, and/or control of the Refinery, including, but not limited to, failing to properly inspect and replace equipment and failing to comply with applicable safety standards.

42. As a further direct and legal result of the aforesaid premises, Plaintiff has suffered damages, including but not limited to costs for emergency response, clean-up of debris, medical bills, and loss of use and enjoyment of property in an amount, according to proof at trial, beyond the jurisdictional minimum of this Court.

43. As a further direct and legal result of the aforesaid allegations, Plaintiff's personal property has suffered a loss of fair market property values as a result of the October 2, 2025 explosion and the continued release of toxins and noise into the atmosphere throughout the operation of the Refinery.

44. As a further direct and legal result of the aforesaid allegations, Plaintiff has suffered damage to environmental resources.

45. As a further direct and legal result of the aforesaid allegations, Plaintiff has suffered harm to the public health, obstruction of the free passage and use of property of public property, and/or the interference with the comfortable enjoyment of life or property.

46. Plaintiff did not consent to Defendant's conduct, which required and continues to require the public to shelter-in-place for extended periods to avoid immediate harm and has created long-lasting, continuing, and/or permanent harm to public health, the environment, and property valuations.

47. As a direct and legal cause of the wrongful acts herein set forth, Plaintiff suffered damages as described above in the preceding paragraphs.

## SECOND CAUSE OF ACTION

**Strict Liability – Ultrahazardous Activity**

48. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

49. "An activity is ultra-hazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care and (b) is not a matter of common usage." *Luthringer v. Moore*, 31 Cal. 2d 489, 498 (1948).

50. At all times relevant herein, Defendant's activities in operating, controlling, managing, and/or maintaining the Refinery constitutes an ultrahazardous and abnormally dangerous activity, as maintenance of a Refinery in a densely populated area poses serious risk of harm, regardless of the amount of care exercised.

51. As alleged herein, Plaintiff was seriously harmed which was a direct result of Defendants' ultrahazardous activities in operating and maintaining the Refinery.

52. Plaintiff's harm, as outlined herein, was the kind of harm that would be anticipated as a result of the risk created by Defendant's abnormally dangerous activities, i.e., maintenance of an oil refinery in a densely populated area.

53. Defendant's ultrahazardous activities resulted in an explosion that emitted debris, ash, toxins, smoke, and other dangerous chemicals into the air, and was therefore a substantial factor causing Plaintiff's harm.

54. As a direct and legal cause of the wrongful acts herein set forth, Plaintiff suffered damages as described above in the preceding paragraphs.

## THIRD CAUSE OF ACTION

**Private Nuisance—Continuing**

55. Plaintiff incorporates and re-alleges, as though fully set forth above, each of the preceding paragraphs.

56. Plaintiff owned, leased, occupied, and/or controlled property at or near the Refinery. Plaintiff has the inalienable right to own, enjoy, and use its property without interference by Defendant's conduct.

57. Plaintiff continues to own, lease, occupy, and/or controlled property at or near the Refinery. Plaintiff has the inalienable right to own, enjoy, and use their properties without interference by Defendant's conduct.

58. Defendants by reason of their failure to exercise care in their operation and maintenance of the refinery, created a condition that harmed Plaintiffs and interfered with Plaintiff's free use and enjoyment of their land, as Plaintiff, along with numerous other neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the properties, and/or exposure to an array of toxic substances on the land, and/or, noise, soot, ash, and dust in the air.

59. An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by Defendants.

60. Plaintiff did not consent to the Defendant's conduct. To the extent Plaintiff gave any express or implied permission for the maintenance of an oil refinery near their properties, such permission extended only to a properly maintained, up-to-date, and safe refinery, and Defendants exceeded the scope of any such consent by operating a poorly maintained, dangerous, aging, and ultimately faulty refinery near the Plaintiff.

61. The aforementioned conduct of Defendant constitutes a nuisance within the meaning of section 3479 of the Civil Code in that it is injurious and/or offensive to the sense of the Plaintiff and/or the unreasonably interferes with the conformable enjoyment of its property and/or unlawfully obstructs the free use, in the customary manner, of Plaintiff' properties.

62. The seriousness of the injuries to Plaintiff outweighs the social utility of Defendant's conduct, as Defendants could have taken steps to prevent the harm while still refining oil.

63. As a direct and legal cause of the wrongful acts herein set forth, Plaintiff suffered damages as described above in the preceding paragraphs.

## **<u>FOURTH CAUSE OF ACTION</u>**

### **Public Nuisance—Continuing**

64. Plaintiff incorporates and re-allege, as though fully set forth above, each of the preceding paragraphs.

65. Defendants by reason of their failure to exercise care in operation and maintenance of the Refinery, created a condition that harmed the public and interfered with the public's free use and enjoyment of public land, as Plaintiffs, along with numerous residents and surrounding neighbors, have suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land, and/or a lingering malicious odor, noise, soot, ash, and dust in the air.

66. An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by Defendants.

67. The conditions affected a substantial number of people at the same time.

68. The seriousness of the harm outweighs the social utility of Defendant's conduct.

69. Plaintiffs did not consent to Defendant's conduct.

70. As direct and legal cause of the wrongful acts herein set forth, Plaintiffs suffered damages as described above in the preceding paragraphs.

## FIFTH CAUSE OF ACTION

**Trespass**

71. Plaintiff incorporates and re-allege, as though fully set forth above, each of the preceding paragraphs.

72. Defendants were engaged in an extrahazardous activity and/or intentionally, recklessly, and/or negligently caused an array of toxic substances, noise, soot, ash, and/or dust to enter Plaintiff's property.

73. Plaintiff did not give permission for this direct and/or indirect entry.

74. Plaintiff, along with numerous residents and surrounding neighbors, have been harmed by DEFENDANTS' conduct, as Plaintiff has suffered the loss of the use and enjoyment of their properties, in the form of damage to buildings and personal property and/or a significant decrease in the value of the property, and/or exposure to an array of toxic substances on the land, and/or soot, ash, and dust in the air that resulted in physical harm to Plaintiff and physical damage to her property.

75. Smoke particles are tangible and consist of dust, ash, soot, and other particulate matter that courts have found to constitute a trespass without a showing of physical damage. See *Kornoff v. Kingsburg Cotton Oil Co*., 45 Cal. 2d 265, 267 (1955).

76. An ordinary person of reasonable sensibilities would reasonably be annoyed and/or disturbed by the conditions created by Defendant.

77. As direct and legal cause of the wrongful acts herein set forth, Plaintiff suffered damages as described above in the preceding paragraphs.

## DAMAGES AND OTHER RELIEF

78. In addition to the relief requested herein and in the Prayer for Relief below, Plaintiff alleges that as a direct and proximate result of the unlawful actions of Defendant, Plaintiff and Class Members have suffered, and continue to suffer, from injuries to themselves and/or to personal property in amounts as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

79. Plaintiff and the Class Members seek injunctive relief and equitable relief regarding DEFENDANTS' past and ongoing unlawful conduct as more particularly alleged herein which includes the activities and/or inaction which give rise to the causes of action for nuisance and trespass. The injunctive and equitable relief includes abatement of Defendant's unlawful activities and such actions and inactions which give rise to the claims alleged herein and the risk posed to the Plaintiff and the Class Members, as well as the public.

80. Plaintiff and the Class Members also seek injunctive or other equitable relief to include abatement and/or monitoring necessary and appropriate as a result of Defendant's actions and inactions as more particularly alleged herein.

81. As a direct and proximate result of the unlawful actions of Defendant, and specifically due to Plaintiff and Class Members' significant and extensive exposure to one or more toxic substances, it is reasonably certain that Plaintiff's and Class Members suffer a significantly increased risk of contracting a serious injury or latent disease relative to their risk had Plaintiff's and Class Members not been exposed to these toxic substances. The diseases that may result from the exposure, such as cancer, are serious and there is a medical benefit from early detection and diagnosis.

82. This increased risk makes periodic diagnostic medical examinations reasonably necessary and certain. Monitoring and testing procedures exist which make the early detection and treatment of injuries or disease possible and beneficial. Such monitoring and testing procedures are reasonable, entitling Plaintiff and Class Members to damages and injunctive relief, including the reasonable costs for future medical monitoring in amounts as yet unascertained, but subject to proof at trial, and within the jurisdiction of this Court.

83. The increased susceptibility to injuries and irreparable threat to the Plaintiff and Class Members' health resulting from their exposure to one or more hazardous substances can only be mitigated or addressed by the creation of a medical

monitoring fund to provide for a medical monitoring program, including: (a) Notifying all persons who have been exposed of the potential harm from the exposure; (b) Gathering and forwarding to treating physicians and other appropriate medical and health professionals information related to the identification, diagnosis and treatment of injuries which may result from exposure(s); and (c) Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of exposed persons including Plaintiff and Class Members.

84. Plaintiff and Class Members have no adequate remedy at law in that monetary damages alone do not compensate for the continuing nature of the harm to them, and a monitoring program which notifies them of possible injury and aids in their treatment can prevent the greater harms which may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur or become worse.

85. Without a court-approved medical monitoring program, Plaintiff and Class Members might not receive prompt medical care which could detect and prolong their productive lives, increase prospects for improvement and minimize disability.

## DEMAND FOR JURY TRIAL

1. Plaintiff and the Class hereby demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

1. For compensatory damages, including but not limited to damages, costs and expenses in connection with any future medical testing, monitoring, or diagnosis of Plaintiff’s and Class Members related to their exposure to toxic substances, in an amount to be ascertained at trial;

2. For equitable relief including injunctive relief which includes abatement of Defendant's conduct giving rise to the claims alleged herein, as well as medical monitoring of Plaintiff and Class Members;
3. For Defendant's wrongful use of the properties including by trespass, the greater of the reasonable rental value of the properties or the benefits obtained by the Defendant wrongfully occupying the properties by reason of the wrongful occupations;
4. For economic damages due to emergency response and permitting costs according to proof;
5. For past and future damages related to environmental remediation and incidental costs according to proof;
6. For diminution in property value according to proof;
7. For damages related to harm to public health, obstruction of the free passage and use of property of public property, and/or the interference with the comfortable enjoyment of life or property according to proof;
8. For pre- and post-judgment interest on all damages as allowed by the law;
9. For attorneys' and expert/consultant fees under existing law;
10. For injunctive relief;
11. For costs of suit incurred herein; and
12. For such other and future relief as the Court may deem just and proper.

Dated: December 11, 2025

**POTTER HANDY LLP**

/s/ James M. Treglio

By: ______________________________

Mark Potter, Esq.
James M. Treglio, Esq.
Isabel Rose Masanque, Esq.
Attorneys for Plaintiff